UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DR. BEKHEIT SALAMOON,

                Plaintiff,

v.

RICHMOND UNIVERSITY MEDICAL CENTER,

                Defendant.

**Case No. 22-CV-5951**

**COMPLAINT**

**ECF CASE**

    COMES NOW PLAINTIFF Dr. Bekheit Salamoon, by his undersigned attorneys, for his complaint against Defendant Richmond University Medical Center, and alleging as follows:

## NATURE OF THE ACTION

    1.    This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objection to a mandatory COVID-19 vaccination policy, wrongly denied his requested religious exemption, and as a result illegally terminated his employment. Plaintiff asserts concurrent claims under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* This is not an action challenging the legality of the COVID-19 vaccination policy itself. By this action, Plaintiff seeks all legal and equitable relief available, including back pay, front pay, lost future earnings, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs. Plaintiff demands trial by jury.

**PARTIES**

2. Plaintiff Dr. **Bekheit Salamoon** is an adult resident of Steubenville, Ohio. At all relevant times, Salamoon was an "employee" of Defendant within the meaning of Title VII and applicable state and city laws. For purposes of this action, Salamoon is a citizen of Ohio.

3. Defendant **Richmond University Medical Center** (RUMC) is a 470+ bed healthcare facility and teaching institution serving the borough of Staten Island. RUMC's main campus is located at 355 Bard Avenue, Staten Island, New York, 10310. Upon information and belief, at all relevant times, RUMC had more than 500 employees. At all relevant times, RUMC was Plaintiff's "employer" within the meaning of Title VII and applicable state and city laws. For purposes of this action, RUMC is a citizen of New York.

**JURISDICTION AND VENUE**

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

5. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity), because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has venue over this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) and 42 U.S.C. § 2000e-5(f)(3) (Title VII), because Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE EXHAUSTION

7. Plaintiff properly exhausted his administrative remedies under Title VII prior to filing this action.

8. On or about December 2, 2021, within 180 days of the alleged discriminatory acts, Dr. Salamoon filed a charge of discrimination against RUMC with the U.S. Equal Employment Opportunity Commission (EEOC). The charge was assigned charge number 520-2022-01863.

9. On July 12, 2022, the EEOC issued a Notice of Right to Sue, a copy of which is attached hereto as **Exhibit A**.

10. This action was filed within 90 days of Dr. Salamoon's receipt of the Notice of Right to Sue.

11. On or about November 29, 2021, Dr. Salamoon filed a complaint with the New York State Division of Human Rights (DHR). The complaint was assigned case number 10214539.

12. On March 16, 2022, the DHR dismissed the complaint on grounds of administrative convenience, pursuant to which Dr. Salamoon "shall maintain all rights to bring suit as if no complaint had been filed." A copy of the order of dismissal is attached hereto as **Exhibit B**.

## ALLEGATIONS

13. Dr. Salamoon was born in Egypt in December 1979.

14. Dr. Salamoon earned his medical degree from Alexandria University Medical School in May 2005.

15. Dr. Salamoon emigrated to the United States in April 2010.

16. RUMC hired Dr. Salamoon as a medical resident in internal medicine in March 2020, and he began his first year of residency in July 2020.

17. After successfully completing his first year of residency, Dr. Salamoon was re-hired by RUMC in June 2021, and he began his second year of residency in July 2021.

18. At all relevant times, Dr. Salamoon was qualified for his position and performed his duties in a satisfactory manner.

19. At all relevant times during his employment with RUMC, Dr. Salamoon lived and worked in Staten Island, New York.

*RUMC's COVID-19 Vaccination Policy
and Dr. Salamoon's Religious Exemption*

20. On or about September 7, 2021, RUMC announced that all persons employed or affiliated with the hospital were required to receive the COVID-19 vaccination by September 27, 2021.

21. Upon information and belief, this policy was adopted in response to the COVID-19 vaccine emergency regulation issued by the New York State Department of Health on or about August 26, 2021 (DOH Mandate).

22. Although the DOH Mandate does not contain a provision for granting religious exemptions, RUMC accepted and evaluated requests for religious exemptions to the COVID-19 vaccination policy.

23. On or about September 22, 2021, Dr. Salamoon submitted a request for a religious exemption to the COVID-19 vaccination policy.

24. Dr. Salamoon is Christian.

25. In his letter requesting an exemption, Dr. Salamoon explained, *inter alia*, that "I oppose jack-booted coercion to take a vaccine my religion forbids me to

take, in all sincerity, my strongly-held belief is rooted in bodily integrity of which my physique inside out is a temple of God. In short, I feel violated with intense pressure to dethrone God and ultimately crush my soul. Moreover, I cannot in good conscience, given my sincere religious beliefs, consent to being inoculated at all, much less 'continuously,' with vaccines that were knowingly tested, developed or produced with cell lines derived from the bodies of aborted babies, some of were even elective abortions. . . . For the purpose of brevity, I concisely stated in this letter my sincere affirmation in Biblical sanctity of life, on the Divine will for mankind to be the image bearers of God and the Divine law on the bodily integrity of mankind, as well as, Biblical interdiction to partake in any form that takes its origin in abortion."

26. Beginning on or about September 27, 2021, in accordance with RUMC policy for unvaccinated personnel, Dr. Salamoon was required to undergo weekly COVID-19 testing and wear an N95 mask at all times. Dr. Salamoon complied with these requirements. He never tested positive for COVID-19.

27. On or about October 10, 2021, Dr. Salamoon received a questionnaire from RUMC about his religious exemption. The questionnaire stated that "[c]onsistent with federal, state and local law, Richmond University Medical Center ("RUMC") provides reasonable accommodation for individual's sincerely held religious beliefs, practices, and observances unless providing a reasonable accommodation would result in undue hardship to the business." The questionnaire explained, *inter alia*, that "RUMC will need to understand the basis and source of your religious beliefs to reasonably assess whether your request qualifies for a religious accommodation."

28. Dr. Salamoon completed and returned the questionnaire on October 13, 2021. In his answers, Dr. Salamoon provided a detailed explanation of his

5

Christian religious beliefs, with multiple biblical citations, and how they conflict with the COVID-19 vaccine.

29. RUMC approved Dr. Salamoon's religious exemption, and he was not required to take the COVID-19 vaccine but was required to follow the masking and testing rules.

*Dr. Salamoon's Termination*

30. This all changed on November 17, 2021, when RUMC announced that "as a result of a recent clarification from the federal court ruling relating to the NYS emergency regulation requiring 'Covered Personnel' receive the COVID 19 vaccine, the New York State Department of Health (DOH) is NOW REQUIRING that all Covered Entities ensure that such Covered Personnel who were previously granted religious exemptions have documentation of either a first dose COVID-19 vaccination or a valid medical exemption prior to the start of any work shift beginning Monday, November 22, 2021. . . . Based on the above, it is the determination of RUMC that no such accommodation can be made. Approving any religious exemptions would cause an undue burden to the hospital, as doing so would negatively impact hospital operations. Therefore, compliance with DOH's directives, as stated herein, is considered mandatory."

31. In response to the announcement, on November 18, 2021, Dr. Salamoon appealed to the RUMC Vice President of Human Resources, to no avail. Dr. Salamoon also submitted a request for a medical exemption to the COVID-19 vaccination policy on the grounds of having robust natural immunity (supported by a doctor's affirmation and laboratory testing), which was denied by the hospital on November 19, 2021.

32. When Dr. Salamoon continued to abide by his good faith religious objections to the COVID-19 vaccination policy, on November 22, 2021, he was advised by his supervisor that he was not authorized to work and instructed to leave the hospital. Dr. Salamoon subsequently received a written notice that he was "ineligible for continued employment with RUMC as of November 22, 2021, and are considered to have resigned your position with the hospital."

*RUMC's Position Statement*

33. On or about February 7, 2022, RUMC submitted a position statement in response to Dr. Salamoon's DHR complaint.

34. In the position statement, RUMC does not question or deny the sincerity of Dr. Salamoon's religious objections to the COVID-19 vaccine.

35. The focus of RUMC's defense to Dr. Salamoon's complaint is that "no reasonable accommodation could be made to address Complainant's continued refusal to receive the COVID-19 vaccination. Any accommodation would pose an undue hardship by either removing the essential functions of Complainant's position or requiring RUMC to violate the DOH regulation that required RUMC to mandate all employees who interact with others receive a COVID-19 vaccine." RUMC also argues that "[i]t would create a burden on RUMC's operations, and more importantly a public safety issue, if RUMC permitted Complainant to continue to work without a vaccination." Presumably these will be the same arguments RUMC will employ in defense of this lawsuit.[1]

---

[1] RUMC also argued that granting Dr. Salamoon a religious exemption to the COVID-19 vaccine would violate a CMS rule issued on November 5, 2021 (*see* 86 Fed. Reg. 61555). The CMS rule, however, expressly recognizes (in Sec. II.A.5) that, pursuant to federal law, "religious beliefs, observances, or practices, may provide grounds for exemption."

*DOH Mandate Does Not Preclude Religious Exemptions*

36. It does not violate the DOH Mandate for a covered entity to grant a covered employee a religious exemption to the COVID-19 vaccination requirement in accordance with federal and state equal employment opportunity laws.

37. The DOH Mandate does not prohibit religious exemptions; rather, it is silent on the issue of religious exemptions.

38. The DOH Mandate does not purport to preempt the rights and protections afforded employees under federal and state equal employment opportunity laws.

39. On November 15, 2021, the Department of Health issued a "Dear Administrator Letter" that stated the DOH's position on this issue.

40. The Letter still is posted on the Department of Health's website and has not been retracted or rescinded.

41. The Letter was issued by Jennifer L. Treacy, Deputy Director, Office of Primary Care and Health Systems Management.

42. The Letter is addressed to "Chief Executive Officers, Nursing Home Operators and Administrators, Adult Care Facility Administrators, and Home Care and Hospice Administrators."

43. The Letter begins by reiterating the COVID-19 vaccination requirement and stating that, beginning November 22, 2021, it applies to covered employees who were previously granted religious exemptions. But then the Letter directs: "Facilities should have a process in place to consider reasonable accommodation requests from covered personnel based on sincerely held religious beliefs consistent with applicable Federal and State laws, including Equal

8

Employment Opportunity (EEO) laws such as Title VII of the Civil Rights Act and the NYS Human Rights Law, and their applicable guidance."

44. The Letter makes clear that the Department of Health does not consider the COVID-19 vaccination mandate to be inconsistent with federal and state EEO laws that require reasonable accommodations for employees' sincerely held religious beliefs. Furthermore, the Letter provides no limitations or restrictions on how covered entities may comply with their obligations under federal and state EEO laws.

45. The EEOC has published extensive guidance relating to COVID-19 (which the "Dear Administrator Letter" instructed healthcare facilities to consider). In "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws," (updated July 12, 2022) (available at www.eeoc.gov), the EEOC has explained:

> An employee who does not get vaccinated due to a disability (covered by the ADA) or a sincerely held religious belief, practice, or observance (covered by Title VII) may be entitled to a reasonable accommodation that does not pose an undue hardship on the operation of the employer's business. For example, as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.

*Id.* § K.2 (Vaccinations – Overview); *see also id.* § L.3 ("In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for religious beliefs, practices, or observances without imposing an undue hardship."). These are precisely the reasonable accommodations at issue here – testing, masking, and sanitizing – that Dr. Salamoon could have followed in lieu of the COVID-19 vaccine.

46. Upon information and belief, the New York Department of Health never has issued any guidance or directives to covered entities that they may not grant religious exemptions in accordance with federal and state EEO laws.

47. Upon information and belief, the Department of Health never has issued any guidance or directives to covered entities that employees who have been granted religious exemptions in accordance with federal and state EEO laws may not work onsite or engage in direct patient care activities.

48. Upon information and belief, since August 26, 2021, and continuing to the present, unvaccinated health care workers with pending or approved religious exemptions have been working onsite and/or engaging in direct patient care activities in health care facilities throughout New York State.

49. Upon information and belief, since August 26, 2021, and continuing to the present, the Department of Health never has penalized a covered entity for allowing unvaccinated health care workers with pending or approved religious exemptions to work onsite and/or engage in direct patient care activities.

50. It would be pure speculation for RUMC to argue that it would have violated state law and potentially subjected the hospital to fines and penalties if it had granted Dr. Salamoon's religious exemption.

*No Undue Risk to Public Health*

51. It would not have caused an undue risk to other employees and patients of catching COVID-19 to allow Dr. Salamoon to continue following the same health and safety protocols – testing, masking, sanitizing, etc. – that were in place before RUMC announced its mandatory vaccination policy. Prior to the mandatory vaccination policy, these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

52. Nothing changed about the dangers of COVID-19 in the Fall 2021 to render these precautions ineffective. On the contrary, rates of hospitalizations and deaths under the "Delta" variant were declining by October 2021, and the "Omicron" variant, which became dominant in December 2021, is widely acknowledged to be *less virulent* than previous waves have been.

53. Significantly, it was well-established by the Fall 2021 that the available COVID-19 vaccines do not prevent the transmission of the virus.

54. On August 5, 2021, during a televised interview with CNN's Wolf Blitzer, CDC Director Dr. Rochelle Walensky stated that the COVID-19 vaccines "continue to work well for Delta, with regard to severe illness and death – they prevent it. But what they can't do anymore is prevent transmission."

55. Upon information and belief, RUMC has no scientific studies, data, or other objective evidence demonstrating that an employee who follows the same health and safety protocols that were in place before RUMC announced its mandatory vaccination policy, but who is not vaccinated, poses an increased risk of spreading COVID-19 to other employees and patients. This is pure speculation.

56. Notably, the DOH Mandate contains an express medical exemption provision, pursuant to which "any reasonable accommodation may be granted . . . ." 10 N.Y.C.R.R. § 2.61(d)(1).

57. Significantly, the DOH Mandate imposes no workplace limitations on employees who receive medical exemptions.

58. According to the New York Department of Health, therefore, an unvaccinated employee who is granted a *medical* exemption does *not* pose an unacceptable risk of spreading COVID-19 to other employees or patients.

11

59. It would be pure speculation, indeed irrational, for RUMC to argue that an unvaccinated employee who is granted a *religious* exemption *does* pose an unacceptable risk of spreading COVID-19 to other employees or patients.

60. Indeed, it is possible that unvaccinated employees who are regularly tested for COVID-19 will be more likely to know they are infected and potentially contagious – and therefore can quarantine and be less likely to transmit the virus unknowingly – than vaccinated employees who do not undergo regular testing.

61. In short, there is no objective, scientific basis for RUMC to argue that granting Dr. Salamoon a religious exemption to the COVID-19 vaccination policy would have posed an undue risk to other employees or patients of becoming sick from COVID-19. This is pure speculation.

*Dr. Salamoon Forced to Relocate to Another State
and Another Medical Residency Program*

62. As a result of being terminated by RUMC, Dr. Salamoon was forced to find a new residency program to complete his training in internal medicine.

63. Fortunately, Dr. Salamoon obtained a position at Trinity Medical Center West (Trinity) in Steubenville, Ohio.

64. Dr. Salamoon began working at Trinity in April 2022.

65. For this new position, Dr. Salamoon was forced to relocate to Steubenville, Ohio, where is presently resides with his wife and two children. He does not intend to return to New York.

66. Trinity did not require Dr. Salamoon to take the COVID-19 vaccine.

67. Dr. Salamoon receives less pay at Trinity than he did at RUMC.

68. At this time, it is uncertain whether Dr. Salamoon will be credited by the American Board of Internal Medicine with the time he spent as a second-year

resident at RUMC, which may delay the completion of his residency as well as the start of full-time employment as a licensed internal medicine doctor.

69. This entire experience has caused Dr. Salamoon significant mental and emotional distress and financial hardship.

## COUNT ONE: VIOLATION OF TITLE VII

70. By denying his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Dr. Salamoon's rights under Title VII.

71. Title VII provides, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

72. Accordingly, under Title VII it is unlawful "for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("The employer violates the statute unless it 'demonstrates that [it] is unable to reasonable accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business.'") (quoting 42 U.S.C. § 2000e(j)).

73. Defendant was recklessly indifferent to Dr. Salamoon's federally protected rights.

13

74. As a direct and proximate result of Defendant's discriminatory conduct, Dr. Salamoon has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to an award of back pay, front pay, lost future earnings, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

**COUNT TWO: VIOLATION OF STATE HUMAN RIGHTS LAW**

75. By denying his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Dr. Salamoon's rights under the New York State Human Rights Law.

76. The State Human Rights Law provides, *inter alia*, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual . . . ." N.Y. Exec. Law § 296(1)(a). The State Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 296(10)(a).

77. Defendant was recklessly indifferent to Dr. Salamoon's state law rights.

78. As a direct and proximate result of Defendant's discriminatory conduct, Dr. Salamoon has suffered pecuniary and non-pecuniary damages,

including lost income and benefits and mental and emotional distress, for which he is entitled to an award of back pay, front pay, lost future earnings, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT THREE: VIOLATION OF CITY HUMAN RIGHTS LAW

79. By denying his request for a religious exemption to the mandatory COVID-19 vaccination policy and terminating his employment, Defendant violated Dr. Salamoon's rights under the New York City Human Rights Law.

80. The City Human Rights Law provides, *inter alia*, that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived . . . creed . . . of any person . . . to discharge from employment such person . . . ." N.Y.C. Admin. Code § 8-107(1). The City Human Rights Law further provides that "[i]t shall be an unlawful discriminatory practice for an employer . . . to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such person." *Id.* § 8-107(3).

81. Defendant was recklessly indifferent to Dr. Salamoon's city law rights.

82. As a direct and proximate result of Defendant's discriminatory conduct, Dr. Salamoon has suffered pecuniary and non-pecuniary damages, including lost income and benefits and mental and emotional distress, for which he is entitled to an award of back pay, front pay, lost future earnings, out of pocket costs, compensatory damages, punitive damages, and attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment against Defendant on his claims under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law, and award him the following relief:

A. Back pay in an amount to be determined at trial;
B. Front pay in an amount to be determined at trial;
C. Lost future income in an amount to be determined at trial;
D. Out of pocket costs in an amount to be determined at trial;
E. Compensatory damages in an amount to be determined at trial;
F. Punitive damages in an amount to be determined at trial;
G. Pre-judgment and post-judgment interest;
H. Attorney's fees and costs;
I. Appropriate injunctive relief; and
J. Such other relief as justice may require.

*For Plaintiff Dr. Bekheit Salamoon:*

/s/ *Steven M. Warshawsky*
_____

Steven M. Warshawsky
The Warshawsky Law Firm
118 North Bedford Road, Suite 100
Mount Kisco, NY 10549
Tel: (914) 864-3353
Email: smw@warshawskylawfirm.com
Web: www.warshawskylawfirm.com

Andrea Paparella
Law Office of Andrea Paparella, PLLC
(pandemic mailing address)
4 Dunlap Street
Salem, MA 01970
Tel: (617) 680-2400
Fax: (914) 462-3287
Email: amp@andreaparella.com
Web: www.andreaparella.com

Dated: October 4, 2022